***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement dated August 19, 2003, as:
 STIPULATIONS
1. Plaintiff had a compensable injury by accident on or about January 17, 2003.
2. The parties are bound by and subject to the Workers' Compensation Act.
3. The employment relationship existed between plaintiff and defendant-employer at all times relevant to this claim.
4. Plaintiff has been totally out of work from April 24, 2003 until the present.
5. This is a claim for disability benefits and medical compensation.
6. Plaintiff has not received any disability benefits as of the date of the pre-trial agreement.
7. Plaintiff has received some medical compensation; however, defendants have not paid for a portion of his treatment, including that received from Dr. Charles T. Beemer, Dr. Anthony Del Genovese, and Dr. Kevin Speer.
8. Plaintiff's average weekly wage will be determined according to the Form 22 as was submitted and received into evidence by the deputy commissioner. Although plaintiff objected to the calculation of plaintiff's average weekly wage pursuant to the Form 22 at the hearing before the deputy commissioner, this issue was not appealed to the Full Commission.
9. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1: Plaintiff's medical records — 131 pages
b. Stipulated Exhibit #2: Industrial Commission Forms — 42 pages
c. Stipulated Exhibit #3: Wage Records
10. The depositions of Anthony Del Genovese, D.C., Charles T. Beemer, M.D., David E. Strom, M.C. and Kevin P. Speer, M.D. have been submitted and received into evidence.
 ***********
Based upon the foregoing stipulations and the competent, credible evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 28 years of age. Plaintiff was born in Saigon, Vietnam and graduated from high school while living there. He moved to the United States in 1994 and became a citizen in 2000. Plaintiff attended community college in the United States and took courses in auto mechanics and auto technician training. Plaintiff has vocational experience working as a technician, a mechanic, a welder and a manicurist.
2. Plaintiff was employed by defendant-employer beginning on April 22, 2002 as a machine shop operator. At the time of his injury by accident, he worked at least 40 hours per week for defendant-employer, and often worked overtime and occasionally double-time for defendant-employer.
3. On January 17, 2003 plaintiff and his co-worker, Rose Cole were pushing a wheeled tub full of parts standing shoulder to shoulder. Ms. Cole saw plaintiff slip and stated, "his left leg kind of went down a little bit." Plaintiff's leg did not strike the floor. Plaintiff did not fall and did not strike his head. Plaintiff's arm did not jerk downward. Ms. Cole did not hear any pop or crack. Plaintiff did not complain of pain and they continued to push the tub into the corner.
4. An hour later, plaintiff complained of pain in his right shoulder, left knee and left ankle to Rose Cole who is a first responder, an individual trained to administer basic first aid in the absence of the plant nurse. Ms. Cole gave plaintiff an ibuprofen and filed an incident report which plaintiff signed. Plaintiff never requested any further medication from Ms. Cole or had any other discussion with her regarding his alleged injury by accident or need for medical treatment.
5. The incident report was presented to Renee Smith, plaintiff's supervisor. Ms. Smith spoke to plaintiff regarding this incident. Plaintiff reported that he slipped and twisted. Ms. Smith informed plaintiff that if he needed medical treatment, he would need to arrange it through the plant nurse. Plaintiff did not return to Ms. Smith seeking medical treatment nor did he request medical treatment from the plant nurse during January 2003.
6. However, on January 18, 2003, plaintiff reported, on his own, to his family physician, Dr. Robert McConville, at Sandhills Family Practice. Plaintiff complained of right shoulder and left leg pain, which began last week after he was carrying heavy bags. There is no mention of any work related injury or accident. Plaintiff claims that the receptionist at the doctor's office told him that the office would not treat him for a work related incident. Plaintiff was given medication and told to return in a week if his condition did not improve.
7. Thereafter on February 3, 2003, plaintiff requested of his employer permission to see a physician for complaints allegedly due to the January 17, 2003 incident. Plaintiff reported to Lori Howell, the plant nurse at GKN that he slipped and turned on a wet floor hurting his right shoulder, left leg, and left ankle. Plaintiff was referred to Joseph Maddux, PA-C. Mr. Maddux diagnosed plaintiff with right shoulder strain and left ankle sprain. Plaintiff was referred to Dr. Stewart Snyder, the company physician for defendant-employer, with complaints of pain in his right shoulder, left leg and left ankle after slipping on a wet floor. Two sets of x-rays taken of plaintiff's right shoulder and left ankle indicated normal results. Dr. Snyder ordered heat wraps for the shoulder, a splint for the ankle and gave plaintiff restrictions which defendant-employer met.
8. Two days later plaintiff returned of his own accord to Sandhills Family Practice on February 5, 2003 and reported that he had fallen two weeks prior to the visit. Plaintiff was prescribed medication.
9. Plaintiff returned to Dr. Snyder on February 7, 2003 who diagnosed strains of the right shoulder, left knee and left ankle.
10. The x-rays performed by Sandhills Family Practice indicated normal results. Plaintiff indicated he would like to see a chiropractor.
11. On February 13, 2003, plaintiff returned to Sandhills Family Practice and reported that his injury had occurred at work. He was referred to an orthopedic surgeon.
12. On February 14, 2003, plaintiff returned to Dr. Snyder who noted right trapezius tenderness, but full range of motion and no joint edema or crepitus. No change was made to plaintiff's work restrictions. Additional x-rays were taken of the right shoulder and left ankle, which remained "normal and unchanged".
13. Plaintiff returned to Dr. Snyder on February 20, 2003. Dr. Snyder referred plaintiff to physical therapy for a right shoulder strain.
14. Plaintiff's last visit to Dr. Snyder occurred on March 6, 2003. Dr. Snyder referred plaintiff to Dr. Neil Conti, a board certified orthopedic surgeon, for evaluation.
15. On March 6, 2003 plaintiff was evaluated by Dr. Conti. His evaluation showed some tenderness at the right trapezious, with mild swelling. Range of motion of the shoulder was 90° to 130°, or near full range of motion. Dr. Conti noted no bump over the collarbone. Dr. Conti reviewed and read the x-rays of the shoulder and ankle as normal. He diagnosed plaintiff with a right trapezoidal strain. He injected the shoulder, ordered physical therapy, and told plaintiff to return in four weeks.
16. On March 19, 2003, plaintiff underwent cervical spine x-rays and a CT scan of his head, which were both normal.
17. Plaintiff sought treatment from another physician on his own on March 20, 2003 who referred him for orthopedic treatment.
18. Due to Dr. Conti's intervening illness, plaintiff was seen by Dr. David Strom, a board certified orthopedic surgeon, on March 25, 2003. Dr. Strom's examination revealed tenderness over the back of the shoulder and AC joint. Plaintiff made no complaints about his knee or ankle. Dr. Strom assessed plaintiff with shoulder pain of undetermined etiology. Dr. Strom ordered an MRI and scheduled plaintiff for a post-MRI follow-up appointment.
19. On March 28, 2003, plaintiff returned Joseph Maddux, PA-C, at Carolina Medicine and received a prescription and an out of work note. There are no medical notes from this visit.
20. On April 11, 2003 plaintiff returned to Dr. Strom to review the results of the MRI. Dr. Strom felt the MRI showed no abnormalities other than a limited problem with the AC joint. Dr. Strom felt this MRI was not as reliable as weighted x-rays due to patient motion. With respect to this MRI, Dr. Strom explained that the abnormal signal did not reflect an AC separation, because the MRI showed no displaced bone, which would be indicative of an AC separation. Thus, the abnormal signal at the AC joint was not clinically significant. Dr. Strom did not believe that plaintiff had an AC separation as a result of the incident of January 17, 2003 as it would have appeared in the x-rays taken in both February and March 2003. Dr. Strom ordered weighted x-rays and a bone scan.
21. Repeat x-rays of plaintiff's right shoulder were taken on April 15, 2003 on referral by Dr. Powell. These x-rays showed no evidence of any fracture and normal relationships of the AC and glenohumeral joints.
22. Plaintiff returned to Carolina Medicine on April 16, 2003. The medical notes show no specific treatment or diagnosis.
23. On April 24, 2003 plaintiff returned to Dr. Strom to review the bone scan results, which revealed no increased uptake localized to the right shoulder, although there was mild increased uptake in both shoulders. Dr. Strom read the bone scan as negative as he felt there was no fracture or dislocation of the right shoulder or the AC joint. There was nothing to indicate a significant trauma to the arm. Dr. Strom diagnosed Plaintiff with right shoulder pain of undetermined etiology. Dr. Strom found no surgically correctable problem with Plaintiff's shoulder and assigned him a 0% PPD rating. Dr. Strom released Plaintiff to return to work full duty, with no restrictions, as of May 5, 2003. Plaintiff did not return to Dr. Conti or Dr. Strom after this date.
24. Plaintiff immediately upon leaving Dr. Strom's office on April 24, 2003, went to see Anthony Del Genovese, a chiropractor whom he selected from the phone book. Although Plaintiff testified that he did not contact the chiropractor until April 24, 2003, after he saw Dr. Strom, Del Genovese's telephone log shows that plaintiff called and made an appointment on April 23, 2003, before he last saw Dr. Strom. Del Genovese is a chiropractor who has practiced for 10 years. He has been licensed to practice in North Carolina for 3 years. Del Genovese is not board certified in any area of practice. He cannot prescribe medication.
25. At the first visit, Del Genovese diagnosed a grade two AC sprain and coraclavicular separation, based solely on his examination of plaintiff. Del Genovese removed plaintiff from work and began a series of approximately 20 treatments of plaintiff. He also performed his own weighted x-rays, but had not seen the weighted x-rays taken by Dr. Strom. While Dr. Strom testified that the results of his weighted x-rays and Del Genovese's interpretation of the later weighted x-rays were inconsistent, Del Genovese explained that Dr. Strom was "just wrong".
26. According to Del Genovese's records, plaintiff informed him that he had fallen, landing on his outstretched arm. While Del Genovese testified that an abrupt force to the arm could cause an AC joint separation, in his opinion, Ms. Cole's account of plaintiff's incident at work would not be sufficient to cause the shoulder injury for which he treated plaintiff.
27. Del Genovese referred plaintiff to Dr. Speer, an orthopedic surgeon, for further examination. On May 8, 2003, plaintiff was initially evaluated by Dr. Speer. Dr. Speer reviewed the MRI and some x-rays, but he is not sure which x-rays he reviewed. He diagnosed a right AC joint separation and recommended surgery. Although Dr. Speer recommended surgery, plaintiff instead chose to see Dr. Charles Beemer for the surgery.
28. Dr. Beemer first evaluated plaintiff on June 13, 2003. Dr. Beemer is a board certified orthopedic surgeon, who has practiced medicine since 1974. Dr. Beemer examined plaintiff and diagnosed a grade two AC joint separation. This was based on his examination of plaintiff and his review of the x-rays taken by Del Genovese. On June 30, 2003, Dr. Beemer performed right shoulder surgery on plaintiff, in which he fixed the AC joint and inserted a screw to affix the repair. As of Dr. Beemer's deposition, which was taken on September 5, 2003, plaintiff was scheduled to return to Dr. Beemer, for removal of the screw, at the end of September.
29. Dr. Beemer also examined plaintiff's left knee and ankle, based on plaintiff's complaints. His examination, as well as the diagnostic tests, were totally normal. As a result, he made no diagnosis concerning the knee or ankle, and assigned no restrictions or permanency ratings to the knee or ankle.
30. After surgery, Dr. Beemer tried to convince plaintiff to discontinue use of the sling and begin using his right arm, but plaintiff refused, claiming his shoulder was too painful. As a result, Dr. Beemer believes that plaintiff's symptoms have been out of proportion to his physical findings. Additionally, within a few days after the screw removal scheduled for late September 2003, Dr. Beemer felt plaintiff would be at MMI and retain a 5% to 10% permanent partial disability rating to his shoulder. He also felt that plaintiff would be released from his care without restrictions at that time.
31. While Dr. Beemer agreed that plaintiff's accident as related by Ms. Cole would not result in an AC joint separation, he also repeatedly offered his opinion that an AC joint separation could not occur even if plaintiff's accident occurred in the manner as described by plaintiff. Dr. Beemer offered lengthy and uncontradicted testimony that plaintiff's description of his incident was that of a traction injury and "I can't in my mind decide how you would separate an AC joint with a traction injury, with the arm being pulled forward," and that "I just can't concede he would dislocate an AC joint with an injury with your arm just being pulled forward", and finally, on further questioning by plaintiff's counsel, "I still just can't reconcile in my mind how you would start an AC joint injury with a — with a traction sort of force on the arm". Finally, as far as plaintiff's condition prior to June 2003, Dr. Beemer would defer to the observations and evaluations of Dr. Strom, whom he felt would be able to determine if plaintiff had an AC separation at that time, but would not defer to the opinions or evaluations of Del Genovese, because he is a chiropractor.
32. Subsequent to this deposition of Dr. Beemer, plaintiff did not return to Dr. Beemer for removal of the screw. Instead, on September 18, 2003, just 15 days after Dr. Beemer's deposition, he returned to Dr. Speer, seeking additional treatment. No explanation was offered as to the reason plaintiff suddenly and inexplicably changed from Dr. Beemer to Dr. Speer in the middle of surgeries. Dr. Speer examined plaintiff, and did x-rays, which showed that the screw placed by Dr. Beemer had become dislodged. This observation is contrary to Dr. Beemer's evaluation, who stated that during his treatment of plaintiff, he thought the screw had never moved, based on the post operative x-rays which he ordered.
33. Dr. Speer re-operated on plaintiff on September 29, 2003, found that the operative repair done by Dr. Beemer had come loose, and re-fixed the joint in a different manner. However, Dr. Speer testified that he felt Dr. Beemer is very competent and that Dr. Beemer's work was not only well done, but was the same strategy which he would have employed. Dr. Speer felt that plaintiff could return to one-handed work subsequent to the second surgery. Dr. Speer did not provide plaintiff with any treatment for any purported problems with his left knee or ankle.
34. Plaintiff also underwent audiologic testing on March 26, 2003, for complaints that his hearing was damaged as a result of his fall, even though he never hit his head. This testing showed no threshold shift in hearing, only asymmetrical hearing loss. According to the audiologist's office, this condition was not a traumatic hearing loss and was not work related. Plaintiff provided no medical evidence of any work related hearing loss.
35. Since last working at GKN in April 2003, plaintiff has not looked for work in any capacity. Instead, in June 2003, prior to his first surgery, he applied for social security disability benefits, which were denied.
36. The Full Commission gives greater weight to the medical records of plaintiff and the testimony of Rose Cole, concerning the nature of plaintiff's accident of January 17, 2003, that plaintiff simply twisted his leg, but did not hit the floor or suffer a trauma to his right arm or shoulder, than to the account given by plaintiff due to the numerous inconsistencies in his hearing testimony and the inconsistencies of his testimony with that of the other witnesses.
37. Based on the testimony of Dr. Strom, the only testifying physician who treated plaintiff prior to April 24, 2003, and the results of plaintiff's diagnostic tests through April 15, 2003, the Full Commission finds that plaintiff did not have a right arm AC joint separation or other AC joint injury prior to April 24, 2003, and thus that any such injury is not related to plaintiff's January 17, 2003 incident at work. The Full Commission gives less weight to the testimony of Dr. Speer and Chiropractor Del Genovese concerning the causation of plaintiff's condition to the incident of January 17, 2003, as their opinions are contrary to the opinions of Dr. Strom and Dr. Beemer, who were in a better position to evaluate plaintiff.
38. The medical evidence establishes that plaintiff did not suffer any injury to his neck, left knee, left ankle, or any hearing loss as a result of any incident or accident at work.
39. Based on the credible lay evidence and the medical evidence, the Full Commission concludes that Plaintiff's compensable slip of January 17, 2003, in which he slightly twisted his left leg, did not result in any permanent injury to his right shoulder, left knee, left ankle, neck, or any hearing loss.
40. Plaintiff suffered no compensable consequence or disability as a result of his January 17, 2003 slip at work and all medical bills related to this incident have been paid by defendant. As plaintiff requires no further medical treatment as a result of this incident, defendant is not obligated to pay for any additional medical treatment for plaintiff as a result of this incident. Plaintiff is not entitled to any indemnity benefits as a result of his incident at work of January 17, 2003, as he was not disabled and lost no time from work as a result of any injuries which are related to this incident.
41. Plaintiff's right arm AC joint separation, for which he treated with Del Genovese, Dr. Beemer, and Dr. Speer, is not causally related to or the result of plaintiff's slip at work on January 17, 2003, and defendant is not liable for any disability resulting there from or any medical expenses incurred by plaintiff as a result thereof.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Though plaintiff sustained a compensable injury by accident on January 17, 2003, the incident did not result in injury to plaintiff's right shoulder and left knee and ankle. N.C. Gen. Stat. § 97-2(6). In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability. Hilliardv. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982).
2. Defendants have paid for authorized medical treatment, including the extensive evaluations and testing that were necessary to provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. The greater weight of the evidence fails to establish that the conditions for which plaintiff has sought extensive evaluation and treatment are causally related to the incident of January 17, 2003. Therefore, he is not entitled to additional medical or indemnity benefits. N.C. Gen. Stat. §§ 97-25, 97-29, 97-30.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 ORDER
1. Under the law plaintiff's claim must be and is hereby DENIED.
2. Defendants shall pay the costs.
This the 18th day of November 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER